# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                            No. 1:14-cr-20216-TLL-PTM-4

v.                            No. 1:13-cr-20622-TLL-PTM-1

ROY C. BRADLEY, SR.,           Hon. Thomas L. Ludington

    Defendant.                 **EXPEDITED CONSIDERATION REQUESTED**

---

## DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)

Defendant Roy C. Bradley, Sr., by his undersigned counsel, respectfully moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for release from incarceration based on the "extraordinary and compelling reasons" presented by the COVID-19 pandemic. Defendant requests that this Court enter an Order modifying its Judgment to reduce Defendant's sentence to time served, or, in the alternative, to allow Defendant to serve the remainder of his sentence on supervised release, with any term of home confinement or other conditions that the Court finds appropriate.

This Court should grant relief based on the likelihood, given Defendant's age and underlying medical conditions, that exposure to COVID-19 will cause him serious illness or death. This risk, especially considered in conjunction with the

totality of the circumstances unique to this Defendant, warrants the relief being

sought. Further, Defendant respectfully requests expedited consideration of this

motion, due to the emergency conditions caused by the COVID-19 pandemic.

Dated:  May 8, 2020                    Respectfully submitted,

                                       SCHIFF HARDIN LLP

                                       */s/ Jacob K. Danziger*
                                       Jacob K. Danziger (P78634)
                                       350 S. Main Street, Ste. 210
                                       Ann Arbor, MI  48104
                                       734-222-1516 (Phone)
                                       734-222-1501 (Fax)
                                       jdanziger@schiffhardin.com
                                       *Attorney for Defendant Roy C. Bradley, Sr.*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                              No. 1:14-cr-20216-TLL-PTM-4

v.                           No. 1:13-cr-20622-TLL-PTM-1

ROY C. BRADLEY, SR.,         Hon. Thomas L. Ludington

     Defendant.           **EXPEDITED CONSIDERATION**
**REQUESTED**

---

## BRIEF IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)

## **TABLE OF CONTENTS**

Index of Authorities ............................................................... iii

Issues Presented ....................................................................ix

Controlling Authority.............................................................x

Preliminary Statement............................................................1

    I.    Background ...............................................................2

    II.    The Coronavirus Pandemic ....................................3

        A.    Prevention ........................................................4

        B.    Individuals at Highest Risk...........................5

        C.    Vulnerability of Inmates ...............................6

        D.    Steps Taken by Congress and Courts to Protect Inmates ...........7

        E.    COVID-19 Epidemic within the Federal Prison system...........13

    III.    Conditions at Elkton.............................................14

    IV.    Roy C. Bradley, Sr. ...............................................14

    V.    The First Step Act.................................................18

        A.    Extraordinary and Compelling Reasons Warrant a Reduction Sentence ......................................................20

        B.    The Sentence Reduction is Consistent with the Section 3553(a) Factors..............................................22

        C.    A Sentence Reduction Is Consistent with Sentencing Commission Policy ..................................25

D.    A Sentence Reduction Is Consistent with Attorney General Barr's Directive ......................................................................... 25

RELEASE PLAN ................................................................................... 26

CONCLUSION ..................................................................................... 27

# <u>INDEX OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Poulios v. United States*,
　2020 WL 192775 (E.D. Va. Apr. 21, 2020) ......................................................10

*In re Manrique*,
　2020 WL 1307109 (N.D. Cal., Mar. 19, 2020) ...............................................8, 9

*In re Request to Commute or Suspend County Jail Sentences*,
　Docket No. 084230 (N.J. Mar. 22, 2020) ...........................................................8

*United States v. Asaro*,
　2020 WL 1899221 (E.D.N.Y. Apr. 20, 2020) ...................................................10

*United States v. Atkinson*,
　2020 WL 1904585 (D. Nev. Apr. 17, 2020)......................................................10

*United States v. Atwi*,
　2020 WL 1910152 (E.D. Mich. Apr. 20, 2020) ................................................10

*United States v. Beck*,
　No. 1:13-CR-186-6, 2019 WL 2716505 (M.D.N.C. June 28, 2019) ................20

*United States v. Ben-Yhwh*,
　No. 1:15-cr-830-LEK, Dkt. No. 206 (D. Hawaii Apr. 13, 2020) ......................11

*United States v. Bolston*,
　Case No. 1:18-cr-382-MLB, Dkt. No. 20 (N.D. Ga. Mar. 30, 2020)................12

*United States v. Campagna*,
　2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020)...................................................12

*United States v. Campos*,
　No. 4:20-cr-56, Dkt. No. 22 (D. Ariz. Apr. 2, 2020)...........................................9

*United States v. Cantu*,
　No. 1:05-CR-458-12019 ...................................................................................20

*United States v. Chavol*,
No. 20-50075 (9th Cir. Apr. 2, 2020)...................................................10

*United States v. Clagett*,
Case No. 2:97-cr-265-RSL, Dkt. No. 238 (W.D. Wash. Apr. 9,
2020) ...................................................................................................11

*United States v. Claudio-Montes*,
No. 3:10-cr-212-JAG-MDM, Dkt. No. 3374 (D.P.R. Apr. 1, 2020)...................9

*United States v. Copeland*,
2:05-cr-135-DCN (D.S.C. March 24, 2020)........................................13

*United States v. Copeland*,
No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020)...................................12

*United States v. Cosgrove*,
Case No. 15-cr-230-RSM, Dkt. No. 95 (W.D. Wash. Apr. 15,
2020) ...................................................................................................10

*United States v. Davis*,
No. 1:20-cr-9-ELH, Dkt. No. 21 (D. Md. Mar. 30, 2020)...................9

*United States v. Edwards*,
No. 6:17-cr-3-NKM, Dkt. No. 134 (Apr. 2, 2020) ............................11

*United States v. Foster*,
No. 1:14-cr-324-02, Dkt. No. 191 (M.D. Pa. Apr. 3, 2020)..............11

*United States v. Gileno*,
2020 WL 1916773 (D. Conn. Apr. 20, 2020)....................................10

*United States v. Gonzalez*,
No. 2:18-cr-232-TOR, Dkt. No. 834 (E.D. Wash. Mar. 31, 2020) ...12

*United States v. Hakim*,
No. 4:05-cr-40025-LLP, Dkt. No. 158 (D.S.D. Apr. 6, 2020) ...........11

*United States v. Hansen*,
2020 WL 1703672 (E.D.N.Y. Apr. 8, 2020) .....................................11

*United States v. Harris*,
No. 19-cr-356 (D.D.C. Mar. 26, 2020)..............................................9

*United States v. Hector*,
Case No. 2:18-cr-3-002, Dkt. No. 748 (W.D. Va. Mar. 27, 2020)....................10

*United States v. Hernandez*,
No. 18-cr-20474, Dkt. No. 41 (S.D. Fla. Apr. 2, 2020) .....................................12

*United States v. Jaffee*,
No. 19-cr-88 (D.D.C. Mar. 26, 2020).................................................................9

*United States v. Joling*,
2020 WL 1903280 (D. Or. Apr. 17, 2020) ........................................................10

*United States v. Kataev*,
Case No. 1:16-cr-763-LGS, Dkt. No. 778 (S.D.N.Y. Apr. 14,
2020) ..................................................................................................................11

*United States v. Kennedy*,
No. 5:18-cr-20315, Dkt. No. 77 (E.D. Mich. Mar. 27, 2020) ...........................10

*United States v. Kriglstein*,
No. 16-cr-663, Dkt. No. 55 (D.N.M. Apr. 23, 2020) ........................................10

*United States v. Logan*,
1:12-cr-307, DKt. No. 179 (N.D.N.Y. Apr. 22, 2020) .......................................10

*United States v. Love*,
No. 1:14-cr-4, Dkt. No. 41 (Apr. 21, 2020)........................................................10

*United States v. Mahan*,
Case No. 1:19-cr-233-DCN, Dkt. No. 67 (D. Idaho Apr. 10, 2020)...................9

*United States v. Marin*,
No. 15-cr-252, Dkt. No. 1326 (E.D.N.Y. Mar. 30, 2020) ..................................12

*United States v. Matthaei*,
No. 1:19-CV-00243-BLW, 2020 WL 1443227 (D. Idaho Mar. 16,
2020) ..................................................................................................................10

*United States v. McCarthy*,
2020 WL 1698732 (D. Conn. Apr. 8, 2020)........................................................11

*United States v. Mclean*,
No. 19-cr-380, Dkt. No. (D.D.C. Mar. 28, 2020).................................................9

*United States v. McPherson*,
  Case No. 3:94-cr-5708, Dkt. No. 209 (W.D. Wash. Apr. 14, 2020) .................11

*United States v. Meekins*,
  Case No. 1:18-cr-222-APM, Dkt. No. 75 (D.D.C. Mar. 31, 2020) ...................10

*United States v. Michaels*, 8:16-cr-76-JVS, Minute Order, Dkt. No. 1061 .............9

*United States v. Muniz*,
  Case No. 4:09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020) .......................12

*United States v. Oreste*,
  Case No. 1:14-cr-20349-RNS-1, Dkt. No. 200 (S.D. Fla. Apr. 6,
  2020) .......................................................................................................11

*United States v. Perez*,
  No. 1:17-cr-513-AT, Dkt. No. 98 (S.D.N.Y. Apr. 1, 2020) .............................12

*United States v. Perez*,
  No. 19 CR. 297 (PAE), 2020 WL 1329225 (S.D.N.Y. Mar. 19,
  2020) .........................................................................................................9

*United States v. Plunk*,
  Case No. 3:94-cr-36-TMB (D. Alaska Apr. 9, 2020) ........................................11

*United States v. Powell*,
  No. 1:94-cr-316-ESH, Dkt. No. 98 (D.D.C. Mar. 28, 2020) .............................12

*United States v. Redd*,
  97-cr-6, 2020 U.S. Dist. LEXIS 45977 (E.D. Va. Mar. 16, 2020) ....................20

*United States v. Rodriguez*,
  No. 2:03-cr-271-AB, Dkt. No. 135 (E.D. Pa. Apr. 1, 2020) .............................12

*United States v. Roeder*,
  2020 WL 1545872 (3d Cir. Apr. 1, 2020) .........................................................10

*United States v. Sawicz*,
  Case No. 08-cr-287, Dkt. No. 66 (E.D.N.Y. Apr. 10, 2020)..............................11

*United States v. Scparta*,
  2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020) ...................................................10

*United States v. Sharp*,
 No. 19-cr-03, Dkt. No. 45 (D. Mont. Apr. 14, 2020) ..........................................10

*United States v. Smith*,
 No. 1:12-cr-133-JFK, Dkt. No. 197 (S.D.N.Y. Apr. 13, 2020).........................11

*United States v. Stephens*,
 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) .......................9

*United States v. Stephens*,
 ECF No. 2798, Case No. 15-cr-95 (S.D.N.Y. Mar. 19, 2020) ............................8

*United States v. Tovar*,
 No. 1:19-cr-341-DCN, Dkt. No. 42 (D. Idaho Apr. 2, 2020)..............................9

*United States v. Tran*,
 8:08-cr-197-DOC, Dkt. No. 405 (C.D. Cal. Apr. 10, 2020)...............................11

*United States v. Trent*,
 Case No. 16-cr-178, ECF No. 106 (N.D. Cal. Apr. 9, 2020) .............................11

*United States v. Williams*,
 No. 3:04-cr-95-MCR-CJK, Dkt. No. 91 (Apr. 1, 2020) ....................................12

*United States v. Zukerman*,
 No. 1:16-cr-194-AT, Dkt. No. 116 (Apr. 3, 2020) .............................................11

*Wilson v. Williams*,
 No. 20-3447, Dkt. 23-2 (6th Cir. May 4, 2020) .......................................1, 21, 22

*Wilson v. Williams*,
 No. 4:20-cv-00794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020)..1, 14, 21, 24

*Xochihua-James v. Barr*,
 No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) .........................................7

**Statutes**

PS 5050.50(3)(b)....................................................................................................10

18 U.S.C. § 2...........................................................................................................2

18 U.S.C. § 371 .......................................................................................................2

18 U.S.C. § 3142(e) ..................................................................................9

18 U.S.C. § 3142(g) ................................................................................25

18 U.S.C. § 3553 ....................................................................................19

18 U.S.C. §3553(a) ................................................................................22

18 U.S.C. § 3582 ...............................................................................*passim*

18 U.S.C. §3582(c)(1)(A) .........................................................................3

18 U.S.C. § 3582(c)(1)(A)(i) ..............................................................19, 20

42 U.S.C. §§ 7412(h), 7413(c)(1) ............................................................2

U.S.S.G. § 1B1.13 .................................................................................20

U.S.S.G. § 1B1.13(2) .............................................................................25

## Issues Presented

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), does the COVID-19 pandemic, in combination with Defendant's age and underlying medical conditions, constitute an extraordinary and compelling reason to issue an Order modifying the Court's Judgment to reduce Defendant's sentence to time served or, in the alternative, to allow the remainder of his sentence to be served on supervised release, with any term of home confinement or other conditions that the Court finds appropriate?

**Yes.**

**Controlling Authority**

18 U.S.C. § 3582

## PRELIMINARY STATEMENT

Roy C. Bradley, Sr. seeks his immediate release from FSL Elkton, a Low-Security Satellite Prison in Elkton, Ohio ("Elkton"). He seeks this relief pursuant to 18 U.S.C. § 3582, as modified by the First Step Act. The spread of COVID-19 currently poses a threat to all U.S. residents. Inmates are particularly vulnerable because of unsanitary conditions within federal prisons, and their inability to follow established guidelines that lower the likelihood of infection.

At age 56, and suffering from diabetes, hypertension, hyperlipidemia and obstructive arterial disease, Mr. Bradley is particularly vulnerable. His age and health issues significantly increase his risk of contracting and suffering the most severe health consequences of COVID-19 – hospitalization and death. The outbreak of COVID-19 and Mr. Bradley's vulnerability to severe illness while incarcerated are extraordinary and compelling reasons that justify his immediate release from Elkton. As the Sixth Circuit Court of Appeals has noted, "Elkton has higher occurrences of infection than most other federal prisons," and "[a]t Elkton, COVID-19 infections are rampant among inmates and staff, and numerous inmates have passed away from complications from the virus."[1] Accordingly, the crisis at

---

[1] *Wilson v. Williams*, No. 20-3447, Dkt. 23-2 at 4 (6th Cir. May 4, 2020); *see also Wilson v. Williams*, No. 4:20-cv-00794, 2020 WL 1940882, at *9 (N.D. Ohio Apr. 22, 2020) ("Of the reported inmate deaths in nation-wide BOP custody, 6 out of 23, more than 1 in 4, has occurred at Elkton, making it a hotspot for the virus and certainly more dangerous than other facilities.")

Elkton is even more severe than at other BOP facilities, critically endangering Mr. Bradley's health and livelihood, and justifying the emergency relief sought herein.

## I.    **BACKGROUND**

On March 18, 2015, Roy C. Bradley, Sr. was convicted of four counts of controlling and supervising a demolition and renovation activity involving at least 260 linear feet and 160 square feet of asbestos-containing material without proper handling, removal, and disposal of the asbestos-containing material, in violation of 42 U.S.C. §§ 7412(h), 7413(c)(1), and 18 U.S.C. § 2.  Mr. Bradley was sentenced to 60 months' imprisonment. No. 1:13-cr-20622-TLL-PTM-1 (E.D. Mich.), ECF No. 124. On June 13, 2017, Mr. Bradley was convicted of one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 371. Mr. Bradley was sentenced to 18 months' imprisonment, to run consecutively to the prior 60 month sentence. No. 1:14-cr-20216-TLL-PTM-4 (E.D. Mich.), ECF No. 374. He began his incarceration at FSL Elton on July 5, 2017.  *Id.* To date, he has served over 34 months of his total sentence.[2]

On April 7, 2020, Defendant submitted a Request for Compassionate Release to the Bureau of Prisons.  Exh. 1, Declaration of Roy C. Bradley ("Bradley Decl.") ¶ 3; Exh. A. On May 1, 2020, the Bureau of Prisons denied Defendant's

---

[2] Based on the Bureau of Prisons' Inmate Locator page, https://www.bop.gov/inmateloc/ (last visited May 8, 2020), Defendant's current release date is: 1/15/2023. Defendant has thus served **over 43%** of his original sentence (of 78 months), and **over 51%** of his actual time in prison based on Defendant's current release date (which is 32 months and 7 days from today's date).

request. Exh. 5; Bradley Decl. ¶ 4. Accordingly, this motion is ripe for adjudication

because Defendant exhausted his administrative remedy, and over 30 days have

passed since the BOP received Defendant's request. 18 U.S.C. §3582(c)(1)(A).

## II.     **THE CORONAVIRUS PANDEMIC**

The United States is facing an unprecedented health crisis.  In March, 2020,

the World Health Organization ("WHO") characterized the spread of a novel

coronavirus, COVID-19, as a global pandemic.[3]  COVID-19 is a respiratory virus

which can cause severe symptoms including high fever, severe cough, shortness of

breath and pneumonia.  According to the WHO, "approximately 14% develop

severe disease requiring hospitalization and oxygen support and 5% require

admission to an intensive care unit to try to prevent the most severe complications

including…stroke, heart or respiratory failure, failure of other organs, or death."[4]

According to Dr. Chris Beyrer, a leading epidemiologist at Johns Hopkins

University, "[O]nly the great influenza pandemic of 1918 (the Spanish Flu as it was

then known) is thought to have higher infectivity."  (Exh. 3, Beyrer Decl. ¶ 10.[5])

---

[3] *Who Director-General's opening remarks at the media briefing on COVID-19*, WHO, (March 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[4] WHO Organization, Clinical Management of Severe Acute Respiratory Infection (SARI) when COVID-19 Disease is Suspected, March 13, 2020, https://www.who.int/publications-detail/clinical-management-of-severe-acute-respiratory-infection-when-novel-coronavirus-(ncov)-infection-is-suspected.

[5] The declarations of Chris Beyrer, M.D (Exh. 3) and Jonathan Louis Golob, M.D. (Exh. 4) were prepared in connection with litigation unrelated to the instant case, and were previously filed as exhibits to the defendant's Expedited Motion to Revoke Detention Order, No. 1:19-cr-341-DCN (D. Idaho March 18, 2020).

Jonathan L. Golob, M.D. a specialist in infectious diseases at the University of Michigan reports that "Nationally, without effective public health interventions, CDC projections indicate about 200 million people in the United States could be infected over the course of the epidemic." (Exh. 4, Golob. Decl. ¶10.) Since its emergence, the number of COVID-19 cases has jumped exponentially. The U.S. had its first case in January, 2020. As of May 7, 2020, the CDC has reported a total of ***1,219,066 cases*** and ***73,297 deaths*** in the United States.[6]

### A.   <u>Prevention</u>

The CDC and WHO have stated that the spread of COVID-19 can be mitigated by social distancing. Social distancing requires, whenever possible, (1) remaining at home, (2) keeping at least six feet of distance from others, (3) avoiding large gatherings, (4) covering coughs and sneezes, (5) washing hands frequently or using an alcohol based rub, and (6) cleaning and disinfecting frequently touched surfaces.[7]

### B.   <u>Individuals at Highest Risk</u>

Dr. Beyrer has stated regarding COVID-19 that "[t]he overall case fatality rate has been estimated to range from 0.3 to 3.5%, which is 5-35 times the fatality

---

[6] *Cases in the U.S.*, CDC, May 7, 2020, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

[7] *See e.g.*, *How to Protect Yourself*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html; *Basic protective measures against the new coronavirus*, WHO, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/advice-for-public;

associated with influenza infection," and "varies significantly depending on the presence of certain demographic and health factors."  (Exh. 3, Beyrer Decl. ¶¶ 5-6.) Dr. Beyrer also reports that "The case fatality rate is higher in men, and varies significantly with advancing age, rising after age 50, and above 5% (1 in 20 cases) for those with pre-existing medical conditions including cardio-vascular disease, respiratory disease, diabetes, and immune compromise."  (Exh. 3, Beyrer Decl. ¶ 6. *See also* Exh. 4, Golob Decl. ¶ 4 ("In the highest risk populations, the case fatality rate is about 15%.").) Dr. Golob has described the extraordinary measures that may be required to care for those individuals who are most vulnerable:  "Most people in the higher risk categories," who contract COVID-19 "will require more advanced support: positive pressure ventilation, and in extreme cases, extracorporeal mechanical oxygenation."  (Exh. 4, Golob Decl. ¶ 6.)  "For high risk patients who do not die from COVID-19, a prolonged recovery is expected to be required, including the need for extensive rehabilitation."  (Exh. 4, Golob Decl. ¶ 4.)

### C.   <u>Vulnerability of Inmates</u>

Dr. Golob confirms that "effective public health measures, including social distancing and hygiene for vulnerable populations, could reduce these numbers." (Exh. 4, Golob Decl. ¶ 10.)  But such measures are "extremely difficult" in a prison setting.  (Exh. 3, Beyrer Decl. ¶ 17 ("While every effort should be made to reduce exposure in detention facilities, this may be extremely difficult to achieve and

sustain.").)  Indeed, the conditions of confinement create an ideal environment for

transmission of COVID-19. The former Medical Director at the Correctional

Health Services at Rikers Island, Dr. Jonathan Giftos, has described these risks:

> [Jails] are not closed systems; there is a tremendous flux
> of people in and out of the facility, including officers and
> other staff, who live in communities overwhelmed by
> positive cases.   Mitigating efforts such as physical
> distancing and frequent hand-washing are impossible in
> jails.  And it is impossible to effectively screen and isolate
> people who are symptomatic to protect others in custody .
> . . . .  And if they do become positive, there is very limited
> medical care available to them.  The only measure that will
> meaningfully impact the spread and harm of Coronavirus
> in the jail-system is to depopulate - to release as many as
> possible to continue their cases in the community - with a
> focus on those at highest risk of complications.[8]

Outbreaks in prisons lead directly to increased spread beyond the confines of

the facility.  (*See* Exh. 3, Beyrer Dec. ¶ 12.)  Social distancing in prisons and

decontaminating surfaces is "virtually impossible."  (*Id* ¶ 13.) Furthermore, "[t]he

high rate of turnover and population mixing of staff and detainees increases

likelihoods of exposure."  (*Id*.)

### D.    <u>Steps Taken by Congress and Courts to Protect Inmates</u>

As a result of the devastating consequences of COVID-19 on the inmate

population, the President, members of Congress, courts, and prosecutors across the

---

[8] *CM Lander Joined Members of Congress to Call for Release of At Risk Inmates from Federal Jails*, NYC Council, Mar. 22, 2020,  https://council.nyc.gov/brad-lander/2020/03/22/cm-lander-joined-members-of-congress-to-call-for-release-of-at-risk-inmates-from-federal-jails/.

country have recognized the need to release prisoners.  Attorney General Barr has

directed the BOP to increase the use of home confinement among older inmates

with underlying conditions to mitigate the spread, directing the BOP to "prioritize

[their] various statutory authorities to grant home confinement for inmates seeking

transfer in connection with the ongoing COVID-19 pandemic."  (Exh. 6.)

   Courts throughout the United States are releasing inmates, recognizing

especially the extraordinary risk posed to the elderly and to those with underlying

health conditions.  *See, e.g., Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar.

23, 2020) (unpublished) (releasing *sua sponte* detainee from immigration detention

"in light of the rapidly escalating public health crisis"); *United States v. Stephens*,

ECF No. 2798, Case No. 15-cr-95 (S.D.N.Y. Mar. 19, 2020) (releasing defendant

in light of "the unprecedented and extraordinarily dangerous nature of the COVID-

19 pandemic"); *In re Request to Commute or Suspend County Jail Sentences*,

Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants from

county jail "in light of the Public Health Emergency" caused by COVID-19).

   One court has recently dismissed BOP's "Impenetrable Fortress" strategy.

*See In re Manrique*, 2020 WL 1307109, at *1 (N.D. Cal., Mar. 19, 2020).

Magistrate Judge Hixson in the Northern District of California found the idea of an

impenetrable fortress to be a fiction:

> The Court is glad to hear that there are currently no
> reported cases of COVID-19 at Maguire, but is unsure

what that means if people are not being tested. And, as the [prison's] management plan itself acknowledges, symptoms of COVID-19 can begin to appear 2-14 days after exposure, so screening people based on observable symptoms is just a game of catch up. That's why the Bay Area is on lockdown. We don't know who's infected. Accordingly, the government's suggestion that Toledo should wait until there is a confirmed outbreak of COVID-19 in Maguire before seeking release, *see* ECF No. 113 at 6 ("If the situation with respect to COVID-19 at Maguire changes, Toledo is free to seek reconsideration of the issue at that point."), is impractical. By then it may be too late. *Id*. at *1.

Courts have now cited the dangers of the COVID-19 pandemic to grant release at all stages of the criminal justice process. Releases because of COVID-19 have been granted pre-trial,[9] pending sentencing after a guilty verdict or plea was

---

[9] *See, e.g.*, *United States v. Mahan*, Case No. 1:19-cr-233-DCN, Dkt. No. 67 (D. Idaho Apr. 10, 2020) (releasing 36-year-old asthmatic defendant with significant criminal history, including aggravated assault and parole violations, charged in 10-year mandatory minimum drug case due to compelling risk posed by COVID-19); *United States v. Campos*, No. 4:20-cr-56, Dkt. No. 22 (D. Ariz. Apr. 2, 2020); *United States v. Tovar*, No. 1:19-cr-341-DCN, Dkt. No. 42 (D. Idaho Apr. 2, 2020); *United States v. Claudio-Montes*, No. 3:10-cr-212-JAG-MDM, Dkt. No. 3374 (D.P.R. Apr. 1, 2020); *United States v. Davis*, No. 1:20-cr-9-ELH, Dkt. No. 21 (D. Md. Mar. 30, 2020) (releasing defendant due to the "urgent priority" of decarcerating, to protect both the defendant and the community, and to preserve Sixth Amendment rights in this perilous time); *United States v. Mclean,* No. 19-cr-380, Dkt. No. (D.D.C. Mar. 28, 2020); *United States v. Michaels*, 8:16-cr-76-JVS, Minute Order, Dkt. No. 1061 (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the COVID-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i).); *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) ("[T]he Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *United States v. Harris*, No. 19-cr-356 (D.D.C. Mar. 26, 2020); *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020); *United States v. Stephens*, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020).

entered,[10] and pending appeal.[11] Significantly, numerous courts are also considering COVID-19 when reducing sentences based on compassionate release or the retroactivity provision in the First Step Act.[12]

---

[10] *See*, *e.g.*, *United States v. Sharp*, No. 19-cr-03, Dkt. No. 45 (D. Mont. Apr. 14, 2020); *United States v. Roeder*, 2020 WL 1545872 (3d Cir. Apr. 1, 2020) (reversing district court's denial of defendant's motion to delay execution of his sentence due to the COVID-19 pandemic); *United States v. Meekins*, Case No. 1:18-cr-222-APM, Dkt. No. 75 (D.D.C. Mar. 31, 2020); *United States v. Hector*, Case No. 2:18-cr-3-002, Dkt. No. 748 (W.D. Va. Mar. 27, 2020); *United States v. Kennedy*, No. 5:18-cr-20315, Dkt. No. 77 (E.D. Mich. Mar. 27, 2020); *United States v. Matthaei*, No. 1:19-CV-00243-BLW, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020.

[11] *See*, *e.g.,* *United States v. Chavol*, No. 20-50075 (9th Cir. Apr. 2, 2020); *United States v. Hector*, No. 2:18-cr-3-002, Dkt. No. 748 (W.D. Va. Mar. 27, 2020) (granting release pending sentencing after Fourth Circuit remanded detention decision requiring court to specifically consider extraordinary danger posed by COVID-19 to folks in prison).

[12] *See*, *e.g.*, *United States v. Kriglstein*, No. 16-cr-663, Dkt. No. 55 (D.N.M. Apr. 23, 2020) (defendant satisfies PS 5050.50(3)(b) released in light of heart & respiratory problems and risk posed by COVID-19); *United States v. Logan*, 1:12-cr-307, DKt. No. 179 (N.D.N.Y. Apr. 22, 2020) (granting compassionate release to 58 years old w/ diabetes, hypertension, hypercholesterolemia, and coronary artery disease); *Poulios v. United States*, 2020 WL 192775 (E.D. Va. Apr. 21, 2020); *United States v. Love*, No. 1:14-cr-4, Dkt. No. 41 (Apr. 21, 2020) (granting pro se motion for release where defendant sentenced for armed bank robbery and brandishing a firearm, due to history of strokes and risk posed by his incarceration at Elkton); *United States v. Scparta*, 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020); *United States v. Atwi*, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020); *United States v. Gileno*, 2020 WL 1916773 (D. Conn. Apr. 20, 2020); *United States v. Asaro*, 2020 WL 1899221 (E.D.N.Y. Apr. 20, 2020); *United States v. Joling*, 2020 WL 1903280 (D. Or. Apr. 17, 2020); *United States v. Atkinson*, 2020 WL 1904585 (D. Nev. Apr. 17, 2020); *United States v. Cosgrove*, Case No. 15-cr-230-RSM, Dkt. No. 95 (W.D. Wash. Apr. 15, 2020); *United States v. Kataev*, Case No. 1:16-cr-763-LGS, Dkt. No. 778 (S.D.N.Y. Apr. 14, 2020); *United States v. McPherson*, Case No. 3:94-cr-5708, Dkt. No. 209 (W.D. Wash. Apr. 14, 2020) (releasing defendant serving sentence on stacked § 924(c) offenses based on injustice of sentence and risk factors for COVID-19, noting that no "civilized society" could permit continued incarceration under these circumstances); *United States v. Ben-Yhwh*, No. 1:15-cr-830-LEK, Dkt. No. 206 (D. Hawaii Apr. 13, 2020) (excusing the 30-day wait and immediately releasing defendant with asthma and diabetes because his risk factors for COVID-19 present "high probability" of "catastrophic health consequences" if he continues to be detained); *United States v. Tran*, 8:08-cr-197-DOC, Dkt. No. 405 (C.D. Cal. Apr. 10, 2020) (ordering compassionate release in light of BOP's inability to protect vulnerable inmates from COVID-19); *United States v. Smith*, No. 1:12-cr-133-JFK, Dkt. No. 197 (S.D.N.Y. Apr. 13, 2020); *United States v. Sawicz*, Case No. 08-cr-287, Dkt. No. 66

(E.D.N.Y. Apr. 10, 2020) (releasing child pornography offender based on "[t]he COVID-19 outbreak at FCI Danbury, combined with the fact that the defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension"); *United States v. Trent*, Case No. 16-cr-178, ECF No. 106 (N.D. Cal. Apr. 9, 2020); *United States v. Clagett*, Case No. 2:97-cr-265-RSL, Dkt. No. 238 (W.D. Wash. Apr. 9, 2020); *United States v. Plunk*, Case No. 3:94-cr-36-TMB (D. Alaska Apr. 9, 2020); *United States v. McCarthy*, 2020 WL 1698732 (D. Conn. Apr. 8, 2020); *United States v. Hansen*, 2020 WL 1703672 (E.D.N.Y. Apr. 8, 2020); *United States v. Oreste*, Case No. 1:14-cr-20349-RNS-1, Dkt. No. 200 (S.D. Fla. Apr. 6, 2020) ; *United States v. Hakim*, No. 4:05-cr-40025-LLP, Dkt. No. 158 (D.S.D. Apr. 6, 2020) (reducing sentence by an extra 40 months under the First Step Act in light of the extreme danger posed by COVID-19); *United States v. Zukerman*, No. 1:16-cr-194-AT, Dkt. No. 116 (Apr. 3, 2020) (waiving exhaustion and granting immediate compassionate release in light of COVID-19 to defendant convicted in multi-million dollar fraud scheme motivated by greed; "The severity of Zukerman's conduct remains unchanged. What has changed, however, is the environment where Zukerman is serving his sentence. When the Court sentenced Zukerman, the Court did not intend for that sentence to 'include a great and unforeseen risk of severe illness or death' brought on by a global pandemic"); *United States v. Foster*, No. 1:14-cr-324-02, Dkt. No. 191 (M.D. Pa. Apr. 3, 2020) (noting the "unprecedented" circumstances facing "our prison system" and finding that COVID-19 is an extraordinary and compelling basis for release; indeed, "[n]o rationale is more compelling or extraordinary"); *United States v. Edwards*, No. 6:17-cr-3-NKM, Dkt. No. 134 (Apr. 2, 2020) (granting compassionate release; "[h]ad the Court known when it sentenced Defendant in 2018 that the final 18 months of his term in federal prison would expose him to a heightened and substantial risk presented by the COVID-19 pandemic on account of Defendant's compromised immune system, the Court would not have sentenced him to the latter 18 months"); *United States v. Hernandez*, No. 18-cr-20474, Dkt. No. 41 (S.D. Fla. Apr. 2, 2020); *United States v. Perez*, No. 1:17-cr-513-AT, Dkt. No. 98 (S.D.N.Y. Apr. 1, 2020); *United States v. Rodriguez*, No. 2:03-cr-271-AB, Dkt. No. 135 (E.D. Pa. Apr. 1, 2020) (granting release after finding risk factors for COVID-19 constitute extraordinary and compelling reason and noting that prisons are "tinderboxes for infectious disease"); *United States v. Williams*, No. 3:04-cr-95-MCR-CJK, Dkt. No. 91 (Apr. 1, 2020); *United States v. Gonzalez*, No. 2:18-cr-232-TOR, Dkt. No. 834 (E.D. Wash. Mar. 31, 2020) (releasing defendant one month into a 10 month sentence in light of medical issues; ordinarily these conditions would be manageable but "these are not ordinary times");  *United States v. Marin*, No. 15-cr-252, Dkt. No. 1326 (E.D.N.Y. Mar. 30, 2020); *United States v. Muniz*, Case No. 4:09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020); *United States v. Bolston*, Case No. 1:18-cr-382-MLB, Dkt. No. 20 (N.D. Ga. Mar. 30, 2020) (releasing defendant in part because "the danger inherent in his continued incarceration at the R.A. Deyton Detention Facility . . . during the COVID-19 outbreak justif[y] his immediate release from custody"); *United States v. Powell*, No. 1:94-cr-316-ESH, Dkt. No. 98 (D.D.C. Mar. 28, 2020); *United States v. Campagna*, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020); Order (Doc. No. 662), at 7, *United States v. Copeland*, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting First Step Act relief to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic").

Congress has also expressed its support for reducing incarceration to mitigate the dangers of COVID-19.  In the CARES Act, which was passed by Congress with unanimous bipartisan support, Congress expressed its view that, in response to the pressures of the pandemic, the federal prison population should be reduced by expanding BOP's authority to release inmates to home detention.[13]

### E.    COVID-19 Epidemic within the Federal Prison system

As quickly as COVID-19 is spreading across the country, it is spreading through the federal prison system even faster: currently the cumulative rate of rise in COVID-19 cases is nearly twice that of the national cumulative rate of rise.[14] According to the Federal Bureau of Prisons' published nationwide data, as of May 8, 2020, *2646 inmates* and *244 BOP staff* have tested positive for COVID-19 nationwide, and there have been *44 federal inmate deaths* attributed to COVID-19.[15] At Elkton alone, *97 inmates* have tested positive, and *8 inmates* have died.[16]

---

[13] *See also* Order (Doc. No. 662), at 7, *United States v. Copeland*, 2:05-cr-135-DCN (D.S.C. March 24, 2020) ("Congress has expressed its desire for courts to 'use all available powers and authorities … to reduce the number of federal prisoners in . . . prisons,' especially individuals like defendant" who had underlying conditions).

[14] *See* Fed. Defenders of New York Southern & Eastern Districts, *BOP COVID-19 Charts and Graphs,* https://federaldefendersny.org/assets/uploads/BOP_COVID-19_Charts_and_Graphs.4.22.pdf (indicating the cumulative BOP rate of rise since March 20, 2020, as of April 22, 2020, is 955.70%, while the national cumulative rate of rise for that period is 498.13%) (last visited April 26, 2020).

[15] *See* Fed. Bureau of Prisons, BOP: COVID-19 Update https://www.bop.gov/coronavirus/index.jsp (last visited, May 5, 2020)

[16] *Id.*

While the BOP data is disturbing, "because testing has been grossly insufficient, these numbers are almost certainly an undercount."[17]

## III.   <u>CONDITIONS AT ELKTON</u>

Mr. Bradley currently resides in an open "dorm-style" room at FSL Elkton, where approximately 150 inmates reside in the same open room, and eat and sleep together. Although the inmates have been told to maintain a "social distance," it is impossible to do so in the hallways, food areas, sleep areas and bathrooms.

As the District Court for the Northern District of Ohio recently concluded, "the prison's "dorm-style" design guarantees that inmates remain in close proximity to one another. With the shockingly limited available testing and the inability to distance inmates, COVID-19 is going to continue to spread, not only among the inmate population, but also among the staff." *Wilson v. Williams*, 2020 WL 1940882, at *3 (N.D. Ohio Apr. 22, 2020). Further, "the deteriorating health conditions at Elkton pose a danger for each of the 2,400 men who are incarcerated at Elkton, the institution's inability to stop the spread of the virus among the inmates in its care poses an even greater risk for inmates whose medical conditions put them at higher risk of death if they contract the virus." *Id.* at 3. The Court also

---

[17] Lisa Freeland, *et al.*, *We'll See Many More Covid-19 Deaths in Prisons if Barr and Congress Don't Act Now*, Wash. Post (Apr. 6, 2020), https://www.washingtonpost.com/opinions/2020/04/06/covid-19s-threat-prisons-argues-releasing-at-risk-offenders/.

concluded that "Elkton has altogether failed to separate its inmates at least six feet apart, despite clear CDC guidance for some time that such measures are necessary to stop the spread and save lives." *Id.* at 8.

## IV.    ROY C. BRADLEY

Mr. Bradley is 56 and has a history of diabetes, hypertension, hyperlipidemia and obstructive arterial disease. Bradley Decl. ¶ 5. As reflected in his medical records (Bradley Decl., Exh. B), Cardiologist Dr. Larry Woods concluded that Mr. Bradley's right ascending coronary artery is entirely occluded. Mr. Bradley's age, heart disease, and other underlying medical conditions put him at high risk for severe illness if he is exposed to COVID-19.[18]

According to the CDC, "people with chronic conditions including diabetes, lung disease and heart disease appear to be at higher risk of severe illness from COVID-19."[19]  "Among COVID-19 patients admitted to the ICU, 32% had diabetes, and 29% had heart disease.  In addition, 37% had other chronic conditions including hypertension or a history of cancer."[20]

---

[18] *See People who are at higher risk for severe illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html.
[19] Allison Aubrey, *Who's Sickest from COVID-19?  These Conditions Tied to Increased Risk*, NPR (Mar. 31, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/03/31/824846243/whos-sickest-from-covid-19-these-conditions-tied-to-increased-risk ("Aubrey, *Who's Sickest from COVID-19?*").
[20] *Id.*

***Mr. Bradley's Heart Disease.*** "[P]eople with heart conditions really are at high risk of developing complications."[21] "Of the first 44,672 diagnosed COVID-19 cases in China, patients with cardiovascular diseases had the highest fatality rate, at 10.5%."[22] "When the coronavirus enters your body and gets down to your lungs, what it does is stop the lungs effectively passing oxygen through into the blood, and so the heart has to work harder to pump that blood, which has less oxygen in it," through the body, and if there is "an underlying heart condition, that will put excess strain on [the] heart and lead to further complications."[23]

When infected with COVID-19, "the lungs turn grey all over as the infection works from the outer air sacs of the lungs. Fluid, pus and debris build. And patients develop Acute Respiratory Distress Syndrome [ARDS]."[24] "There is no cure for ARDS. Ventilators buy time as the body tries to heal but the lack of oxygen and the assault on the body put a tremendous strain on the heart. Many patients develop heart failure. Those with weak hearts to begin with are most at risk."[25]

---

[21] Emmanuel Ocbazghi, *How COVID-19 Affects People with Diabetes, Cancer, and Other Conditions*, Bus. Insider (Apr. 2, 2020), https://www.businessinsider.com/how-covid-19-affects-conditions-diabetes-asthma-cancer-underlying-copd-2020-3 ("Ocbazghi, *How COVID-19 Affects People*").

[22] Ocbazghi, *How COVID-19 Affects People.*

[23] *Id.*

[24] Katharin Czink, et al., *Why COVID-19 Is So Dangerous for the Heart*, WGNTV (Mar. 30, 2020), https://wgntv.com/news/medical-watch/why-covid-19-is-so-dangerous-for-the-heart/ ("Czink, *Why COVID-19 Is So Dangerous*").

[25] *Id.*

"A virus also may pose a special risk for people who have the fatty buildup known as plaque in their arteries" and "[e]vidence indicates similar viral illnesses can destabilize these plaques, potentially resulting in the blockage of an artery feeding blood to the heart, putting patients at risk of heart attack."[26] "Someone with an underlying heart issue also might have a less robust immune system" and when they catch a virus "it's likely to stick around and cause complications."[27]

***Mr. Bradley's Diabetes.*** "Diabetes is a metabolic syndrome that involves blood glucose levels," weakening the immune system and making "it less effective."[28] Due to a weakened immune system, people with diabetes "are at risk for many infections[,] not just coronavirus."[29] For example, "[t]hey often struggle with infections on their skin and soft tissues, with pneumonia and even more serious conditions."[30] People with diabetes have a "higher risk of developing complications" from COVID-19 because "[h]igh levels of blood sugar over a long period of time can actually depress your immune system, so it doesn't respond as quickly to the virus."[31] That buys the virus "more time to replicate, get down to

---

[26] *What Heart Patients Should Know,* Am. Heart Ass'n News.
[27] *Id.*
[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] Ocbazghi, *How COVID-19 Affects People*.

[the] lungs, and cause . . . [breathing] problems . . . that can lead to needing hospital treatment."[32]    Diabetics also face a higher risk of developing pneumonia.[33] "[T]here is evidence that pneumonia caused by COVID-19 may be particularly severe" because "cases of coronavirus pneumonia tend to affect all of the lungs, instead of just small parts."[34] "[T]he body's response is first to try and destroy [the virus] and limit its replication."[35] "But," the immune response "can be impaired in some groups, including people with underlying heart and lung conditions, diabetes and the elderly."[36]

### *BOP has already classified Mr. Bradley as high-risk for COVID-19.*

Indeed, even the BOP has identified Mr. Bradley as having a high risk COVID-19 complications. In *Wilson*, the District Court ordered the BOP to identify the Elkton inmates who are over 65 or who have "pre-existing medical conditions, including heart, lung, kidney, and…diabetes." 2020 WL 1940882, at *6. In response, the BOP identified Mr. Bradley as an Elkton inmate meeting this medically-vulnerable criteria. *See* Case No. 4:20-cv-00794, ECF No. 35-1.

---

[32] *Id.*

[33] Readfearn, *What Happens to People's Lungs?*

[34] *Id.*

[35] *Id.*

[36] *Id.*

Other courts have released inmates with similar medical histories under similar circumstances. *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *9 (E.D. Pa. Apr. 1, 2020) (granting release to Elkton inmate with history of diabetes, high blood pressure, and liver abnormalities, and finding that the "BOP cannot adequately protect Mr. Rodriguez from infection, especially in light of his vulnerability and the presence of COVID-19 in FCI Elkton.")

## V.   <u>THE FIRST STEP ACT</u>

On December 21, 2018, the President signed into law the First Step Act of 2018.  As a result, Section 3582(c)(1)(A)(i) now permits the Court to modify an imposed term of imprisonment if: (1) 30 days has elapsed from the warden's receipt of a request for a modification of the terms of imprisonment; (2) extraordinary and compelling reasons warrant such a reduction; (3) the Court has taken into account sentencing factors set forth in 18 U.S.C. § 3553; and (4) the reduction is consistent with applicable Sentencing Commission policy statements. No longer is the Court divested of jurisdiction after sentencing a defendant.  Upon the proper showing and in light of extraordinary circumstances this Court is permitted to release an inmate.  Following the First Step Act's passage, courts have held that they are vested with discretion to find "extraordinary and compelling reasons" for a reduction in sentence that go beyond the technical requirements set forth in BOP regulations and U.S.S.G. § 1B1.13, application note 1 (setting forth

17

such "extraordinary and compelling reasons" as "terminal illness" and a guideline that a prisoner over 65 years old should be released early when he has "served at least 10 years or 75 percent of his sentence").  *See United States v. Redd*, 97-cr-6, 2020 U.S. Dist. LEXIS 45977 at *7-12 (E.D. Va. Mar. 16, 2020) (district courts vested with discretion to find "extraordinary and compelling reasons" beyond the technical requirements of the guidelines manual or BOP regulations); *United States v. Cantu*, No. 1:05-CR-458-12019, WL 2498923, at *5 (S.D. Tex. June 17, 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

## A. <u>Extraordinary and Compelling Reasons Warrant a Reduction Sentence</u>

Mr. Bradley, like every person in this country, is in danger of contracting a pernicious, aggressive life-threatening virus.  Unlike most people in this country, however, he has no way to practice the social distancing and sheltered protective measures that are mandated by governments and health officials throughout the nation and which promise some hope of surviving the consequences of infection. Indeed, Mr. Bradley is prevented from such practices due to the living conditions in which he is incarcerated at Elkton, as recently recognized by the District Court

in *Wilson v. Williams*. *See* 2020 WL 1940882, at *3 (N.D. Ohio Apr. 22, 2020);

Case No. 4:20-cv-00794, ECF No. 57 at 1, concluding that at Elkton, "[d]istancing

is impossible," and noting that ***eight*** Elkton inmates have died of COVID-19.

Mr. Bradley has multiple conditions that put him at higher risk for severe

illness or death.  His age and gender alone increase his risk.  In addition, he suffers

from diabetes, hypertension, hyperlipidemia and obstructive arterial disease.

Because of his health conditions, it is critical that he limit his contact with other

individuals, maintain social distancing, wash his hands frequently, and insure that

high-touch surfaces such as counters, tabletops, doorknobs, bathroom fixtures,

toilets, phones, keyboards, and tablets are sanitized.[37]

It is becoming clear that the BOP's strategy for dealing with this pandemic

flies in the face of every health expert and governmental order in the country.  The

BOP has explicitly acknowledged that there will be "more confirmed cases in the

coming weeks and also noting that the population density of prisons creates a risk

of infection and transmission for inmates and staff."[38]  While the BOP's guidelines

generally discuss "social distancing," suspending social and legal visits for at least

30 days, screening of staff and inmates, and quarantining symptomatic inmates and

---

[37] Harvard Health Publishing, *If You Are At Higher Risk, How to Reduce the Risk of Infection and What to Do If You Are Sick* (March 2020), https://www.health.harvard.edu/diseases-and-conditions/if-you-are-at-higher-risk.
[38] *Federal Bureau of Prisons COVID-19 Action Plan*,
https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited Apr. 2, 2020).

asymptomatic inmates with exposure risk factors, there do not appear to be any

systematic efforts to implement such practices at Elkton.  Importantly, the BOP's

procedures at Elkton do not currently involve many of the basic preventative steps

counseled by health experts, the CDC, and the President of the United States.  As

exemplified by Mr. Bradley's sleeping and eating conditions within Elkton, "social

distancing" is not possible in a group of 150 people in an open dorm.

However, in spite of this clear and growing danger within BOP facilities

generally, and Elkton specifically, where the Sixth Circuit has concluded that

"COVID-19 infections are rampant among inmates and staff,"[39] the BOP has

nonetheless **denied** Mr. Bradley's Request for Compassionate Release. Exh. 5.

**B.**   **The Sentence Reduction is Consistent with the Section 3553(a)
Factors**

The sentencing factors set forth in 18 U.S.C. §3553(a) warrant a reduction

for Mr. Bradley.

The applicable factors are:

(1)   the nature and circumstances of the offense and
the history and characteristics of the defendant;

(2)   the need for the sentence imposed –

(A)   to reflect the seriousness of the offense, to
promote respect for the law, and to provide just
punishment for the offense;

---

[39] *Wilson v. Williams*, No. 20-3447, Dkt. 23-2 at 4 (6th Cir. May 4, 2020)

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

   (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

   (7) the need to provide restitution to any victims of the offense.

The first factor is "the nature and circumstances of the offense and the history and characteristics of the defendant."  Mr. Bradley was convicted only of non-violent offenses.  He has demonstrated good conduct and rehabilitation.  He has spent nearly three years in Federal BOP custody without disciplinary infractions, maintaining a clean record while pursuing continued education. Bradley Decl. ¶ 6. As the Court will recall from the sentencing proceedings, Mr. Bradley is a good person and a dedicated family man. The impact of Mr. Bradley's unfortunate childhood, and resulting substance abuse issues earlier in his life, cannot be underestimated.  It is to his enormous credit that Mr. Bradley overcame his addiction to become a dedicated family man, and achieve some success as a business person. Mr. Bradley got married, raised 4 kids, and is now raising 2 of his grandchildren. Case No. 1:14-cr-20216-TLL-PTM-4 (E.D. Mich.), ECF No. 373.

The second factor is the need for the sentence imposed to serve the enumerated purposes of punishment.  The Court should "impose a sentence sufficient, but not greater than necessary, to comply with [these] purposes."  When sentencing Mr. Bradley, the Court did not intend to expose Mr. Bradley, as a result of his incarceration, to significant risk of severe illness or death.  Mr. Bradley is completely unable to do those things that are essential, in light of his age and medical condition, to prevent serious illness or death.  This is a sentence that is "greater than necessary" to comply with the statutory purposes of punishment. *See United States v. Zukerman,* No. 1:16-cr-194-AT, Dkt. No. 116 (Apr. 3, 2020) (granting immediate compassionate release in light of COVID-19 to defendant convicted in multi-million dollar fraud scheme motivated by greed; "The severity of Zukerman's conduct remains unchanged. What has changed, however, is the environment where Zukerman is serving his sentence. When the Court sentenced Zukerman, the Court did not intend for that sentence to 'include a great and unforeseen risk of severe illness or death' brought on by a global pandemic.")

The final relevant factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  The conditions under which Mr. Bradley is serving his sentence present an unwarranted sentence disparity from other individuals convicted of similar offenses.  He is largely confined to an open dorm-style room with

approximately 150 other individuals, under conditions which are, in light of the highly contagious COVID-19, unsanitary and likely to lead to serious illness or death, as recognized by other courts. *See, e.g., Wilson,* 2020 WL 1940882, at *3. Further, he has already served a significant portion of his sentence (34 months).

### C.   <u>A Sentence Reduction Is Consistent with Sentencing Commission Policy</u>

The Commission's policy statement provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

Clearly, Mr. Bradley is not a danger to the safety of others or to the community. Mr. Bradley was convicted only of non-violent offenses. He has demonstrated good conduct and rehabilitation. No matter the Court's view of Mr. Bradley's culpability for his convicted offenses, all of the offenses related to a single course of conduct that is exceptionally unlikely to be repeated, and he has already served over 34 months of his sentence for these offenses. Nothing in his history comes remotely close to suggesting that he would be a danger to others.

### D.   <u>A Sentence Reduction Is Consistent with Attorney General Barr's Directive</u>

Attorney General Barr identified six factors relevant to the decision to permit home confinement to individual inmates: (1) the agent and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and

Prevention guidelines; (2) the security level of the facility currently holding the inmate; (3) the inmate's conduct in prison; (4) the inmate's score under PATTERN;[40] (5) whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism; and (6) the inmate's crime of conviction.

Taking each of these factors into account, Mr. Bradley should have his sentence reduced to time served. Mr. Bradley is 56 years of age, suffers from diabetes, hypertension, hyperlipidemia and obstructive arterial disease. Under the CDC Guidelines, as well as under the BOP's own criteria, he is at high risk for severe COVID-19 illness, and potential death. FSL Elkton is low security, and Mr. Bradley's conduct at Elkton has been exemplary. Bradley Decl. ¶ 6. Mr. Bradley has received a minimum score under PATTERN.

## **RELEASE PLAN**

Mr. Bradley has a release plan to ensure his safe transition to the community. If his sentence is reduced to time served or modified to supervised release, Mr. Bradley will reside with his wife Tammy Bradley. *See* Bradley Decl. ¶ 7; Exh. 2, Declaration of Tammy Bradley ¶ 3. Mrs. Bradley would provide for any of Defendant's necessary financial support, and she would provide for any of Defendant's necessary medical care. Mrs. Bradley has been in social isolation

---

[40] Prisoner Assessment Tool Targeting Estimated Risk and Needs

during the course of the COVID-19 pandemic, and she has no symptoms of COVID-19.  *Id.* at ¶ 4. Mr. Bradley's release would substantially decrease his likelihood of contracting COVID-19. In addition, Mr. Bradley's release would greatly alleviate the financial and emotional hardships that Mrs. Bradley is currently experiencing while maintaining her role as a full-time caretaker for their grandchildren. *Id.* ¶ 5.

## CONCLUSION

Accordingly, upon consideration of Roy C. Bradley's emergency motion and his extraordinary and compelling showing, we respectfully request that this Court enter an Order modifying its Judgment to reduce Defendant's sentence to time served, or, in the alternative, to allow Defendant to serve the remainder of his sentence on supervised release, with any term of home confinement or other conditions that the Court finds appropriate. Defendant also requests expedited consideration, due to the emergency conditions caused by COVID-19.

Dated:  May 8, 2020                  Respectfully submitted,

SCHIFF HARDIN LLP

*/s/ Jacob K. Danziger*
Jacob K. Danziger (P78634)
350 S. Main Street, Ste. 210
Ann Arbor, MI  48104
734-222-1516 (Phone)
734-222-1501 (Fax)
jdanziger@schiffhardin.com
*Attorney for Defendant Roy C. Bradley, Sr.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2020, a copy of the foregoing was filed with

the Court using the ECF system which will send notification of such filing to all

attorneys of record.

By: */s/ Jacob K. Danziger*
Jacob K. Danziger

CH2\23295877.2